**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENISE GROULX, Individually and for Others Similarly Situated | **Case No.** <u>8:23-cv-561 **(MAD/DJS)**</u> |
| v. | Jury Trial Demanded |
| UNITED HELPERS CARE, INC. | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Denise Groulx (Groulx) brings this class and collective action to recover unpaid overtime and other damages from United Helpers Care, Inc. (UHC).

2.      Groulx worked for UHC as a Resident Counselor in Ogdensburg, New York.

3.      Like the Putative Class Members (as defined below), Groulx regularly worked more than 40 hours in a workweek.

4.      But UHC did not pay them for all the hours they worked.

5.      Instead, UHC automatically deducted 30 minutes a day from these employees' work time for so-called meal breaks.

6.      Groulx and the Putative Class Members were thus not paid for that time.

7.      But UHC fails to provide Groulx and the Putative Class Members with *bona fide* meal breaks.

8.      Instead, UHC requires Groulx and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

9.    UHC's auto-deduction policy violates the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) by depriving Groulx and the Putative Class Members of overtime pay, for all overtime hours worked.

10.    In addition to depriving these employees of pay for time worked during their unpaid meal breaks, UHC also requires Groulx and the Putative Class Members to work unpaid "on call" shifts for at least 4 days each week.

11.    During their "on call" shifts, Groulx and the Putative Class Members are required to carry an electronic device supplied by UHC and respond to calls from UHC to immediately return to work, if needed.

12.    But UHC does not pay Groulx and the Putative Class Members for their "on call" shifts unless they are actually required to return to work.

13.    UHC's "on call" shift policy violates the FLSA and NYLL by depriving these employees of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

14.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15.    The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16.    This Court has general personal jurisdiction over UHC because UHC is domestic corporation that is headquartered in Ogdensburg, New York.

17.    Venue is proper because UHC maintains its headquarters in Ogdensburg, New York, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

18.     Groulx worked for UHC as a Resident Coordinator in Ogdensburg, New York from approximately October 1997 until October 2022.

19.     Throughout her employment, UHC classified Groulx as non-exempt and paid her on an hourly basis.

20.     But throughout her employment, UHC subjected Groulx to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

21.     Throughout her employment, UHC required Groulx to work "on call" shifts for which she was not paid.

22.     Groulx's written consent is attached as **Exhibit 1**.

23.     Groulx brings this action on behalf of herself and other similarly situated hourly, non-exempt UHC employees who were subject to UHC's automatic meal break deduction policy and/or UHC's unpaid "on call" shift policy.

24.     UHC automatically deducts 30 minutes/shift from these employees' recorded hours worked for so-called "meal breaks."

25.     But UHC uniformly requires all these employees to remain on-duty and perform work throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

26.     UHC also uniformly requires these employees to work unpaid "on call" shifts.

27.     The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt UHC employees who received an automatic meal period deduction and/or worked an "on call" shift at any time during the past 3 years ("FLSA Collective Members" or "FLSA Collective").**

28.     Groulx also seeks certification of such a class under the NYLL pursuant to FED. R. CIV. P. 23.

29. The New York Class of similarly situated employees is defined as:

> **All hourly, non-exempt UHC employees who received an automatic meal period deduction while working in New York and/or worked an "on call" shift in New York at any time during the past in the past 6 years and 228 days[1] from the filing of this Complaint ("New York Class Members" or the "New York Class").**

30. The FLSA Collective Members and New York Class Members are collectively referred to as the "Putative Class Members."

31. UHC is a New York non-profit corporation that maintains its headquarters in Ogdensburg, New York.

32. UHC may be served with process by serving its President, **Dr. Galen Pletcher, at 732 Ford Street, Ogdensburg, New York 13669**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

33. At all relevant times, UHC was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

34. At all relevant times, UHC, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

35. At all relevant times, UHC was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C.

---

[1] The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from March 20th to November 3, 2020. *See McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

§ 203(s)(1)(B), because UHC, as a hospital network, is engaged in the operation of a hospital and is an institution primarily engaged in providing healthcare services.

36.    At all relevant times, UHC has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cellphones, computers, medical tools and equipment, personal protective equipment, etc. – that have been moved in or produced for commerce.

37.    In each of the past 3 years, UHC has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

38.    At all relevant times, Groulx and the Putative Class Members were UHC's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

39.    UHC uniformly deducted 30 minutes/shift from Groulx's and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, uninterrupted meal breaks.

40.    As a result, UHC failed to pay Groulx and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

41.    UHC's automatic meal break deduction policy, which deprives Groulx and the Putative Class Members of overtime compensation for all overtime hours worked for the weeks in which these workers work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

42.    Further, UHC uniformly required Groulx and the Putative Class Members to work "on call" shifts.

43.    But UHC does not pay Groulx and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

44.     UHC's uniform unpaid "on call" shift policy, which deprived Groulx and the Putative Class Members of overtime compensation for all overtime hours worked for the weeks in which these workers work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

### FACTS

45.     UHC bills itself as "one of the largest health care providers and one of the largest employers in St. Lawrence Country"[2] that "provid[es] post-acute health and human services"[3] in northern New York.

46.     UHC employs patient care workers, including Groulx and the Putative Class Members, to provide healthcare services and treat the patients in its various facilities.

47.     UHC uniformly classifies these employees as non-exempt and pays them on an hourly basis.

48.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

49.     For example, Groulx worked for UHC as a Resident Coordinator in Ogdensburg, New York from approximately October 1997 until October 2022.

50.     As a Resident Counselor, Groulx's primary responsibilities include providing patient care to the residents at Gateway Apartments, such as monitoring patients, checking vitals, grooming patients, charting treatments, and assisting doctors and other patient care staff.

51.     Throughout her employment, UHC classified Groulx as non-exempt and paid her on an hourly basis.

---

[2] https://www.unitedhelpers.org/employment/ (last visited May 8, 2023).
[3] https://www.unitedhelpers.org/about-us/ (last visited May 8, 2023).

52.     Throughout her employment, UHC subjected Groulx to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

53.     Throughout her employment, UHC subjected Groulx to its common practice of requiring her to work unpaid "on call" shifts.

54.     Groulx and the Putative Class Members performed their jobs under UHC's supervision, and using materials, equipment, and technology approved and supplied by UHC.

55.     UHC requires Groulx and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

56.     At the end of each pay period, Groulx and the Putative Class Members received wages from UHC that were determined by common systems and methods that UHC selected and controlled.

57.     UHC requires its hourly, non-exempt employees, including Groulx and the Putative Class Members, to record their hours worked using UHC's timeclock system.

58.     Further, UHC subjects its hourly, non-exempt employees, including Groulx and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

59.     Specifically, UHC automatically deducts 30 minutes from Groulx and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

60.     But UHC fails to provide Groulx and the Putative Class Members with *bona fide* meal periods.

61.     Instead, UHC requires Groulx and the Putative Class Members to remain on-duty and working throughout their shifts and continuously subjects them to interruptions during their unpaid meal periods.

62. Indeed, because of these constant work interruptions, Groulx and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

63. Rather, during their unpaid "meal breaks," Groulx and the Putative Class Members are forced to substantially perform their regular patient care job duties and responsibilities.

64. Thus, Groulx and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for UHC's – not these employees' – predominant benefit.

65. This unpaid time is compensable under the FLSA and NYLL because UHC knew, or should have known, that (1) Groulx and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant interruptions, (7) they remained on UHC's premises, and/or (8) they predominantly spent their unpaid meal periods performing their regular patient care duties for UHC's predominant benefit..

66. UHC failed to exercise its duty to ensure Groulx and the Putative Class Members were not performing work that UHC did not want performed during their unpaid "meal breaks."

67. Despite accepting the benefits, UHC did not pay Groulx and the Putative Class Members for the compensable work they performed during their "meal breaks."

68. Thus, under UHC's uniform automatic meal break deduction policy, Groulx and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA and NYLL.

69. Further, in addition to failing to pay Groulx and the Putative Class Members for the work they perform during their unpaid "meal breaks," UHC also subjects Groulx and the Putative

Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment to UHC's – not these employees' – primary benefit.

70.    UHC's uniform rounding policy violates the FLSA and NYLL by depriving Groulx and the Putative Class Members of overtime pay for all overtime hours worked because UHC fails to include all work time in these employees' total hours worked.

71.    UHC knows Groulx and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because UHC expects and requires these employees to do so.

72.    But UHC does not pay Groulx and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA and NYLL.

73.    Finally, UHC also requires Groulx and the Putative Class Members to be "on call" for at least 4 days/week.

74.    During their "on call" shifts, Groulx and the Putative Class Members are required to carry an electronic device supplied by UHC and respond to calls from UHC and immediately return to work, if needed.

75.    But UHC does not pay Groulx and the Putative Class Members for their "on call" shifts unless they are actually required to return to work.

76.    UHC's "on call" shift policy violates the FLSA and NYLL by depriving these employees of overtime wages for all overtime hours worked.

77.    Groulx worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

78.    For example, in the 2-week workweek ending on July 2, 2022, Groulx worked 80.25 hours:

**Earnings for Jun 19 - Jul 2**

| Description | Hours | Amount |
|---|---|---|
| Overtime Rate $30.69 | 0.25 | $7.67 |
| Pto Rate $20.46 | 4.00 | $81.84 |
| Regular Rate $20.46 | 76.00 | $1,554.96 |
| Totals | 80.25 | $1,644.47 |

79.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

80.     Indeed, Groulx and the Putative Class Members typically work 8- to 9-hour shifts for at least 5 days a week.

81.     And Groulx and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" to complete their job duties and patient care responsibilities.

82.     Likewise, Groulx and the Putative Class Members routinely have to work "on call" shifts for which they are not paid.

83.     As a result, Groulx and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

84.     When Groulx and the Putative Class Members worked more than 40 hours in a workweek, UHC did not pay them overtime wages at 1.5 times their regular hourly rate for all overtime hours worked because UHC failed to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek.

85.     UHC knew, or should have known, it was subject to the FLSA and NYLL, including their respective overtime provisions.

86.    UHC knew, or should have known, the FLSA and NYLL require it to pay employees, including Groulx and the Putative Class Members, overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

87.    UHC knew, or should have known, Groulx and the Putative Class Members worked more than 40 hours in a workweek.

88.    UHC knew, or should have known, Groulx and the Putative Class Members regularly worked "off the clock" during their unpaid meal breaks because UHC expected and required them to do so.

89.    UHC knew, or should have known, Groulx and the Putative Class Members regularly worked "off the clock" during their unpaid "on call" shifts because UHC expected and required them to do so.

90.    UHC knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA and NYLL.

91.    UHC knowingly, willfully, and/or in reckless disregard carried out these illegal policies and practices that deprived Powell and the Putative Class Members of overtime compensation for all overtime hours worked in violation of the FLSA and NYLL.

92.    Nonetheless, UHC failed to pay Groulx and the Putative Class Members overtime compensation for all hours these employees worked in excess of 40 hours in a workweek.

93.    UHC's failure to pay Groulx and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

94.    Groulx brings this case as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

95.     The Putative Class Members were victimized by UHC's (1) automatic meal break deduction policy, (2) automatic rounding policy, and/or (3) "on call" shift policy that deprived these employees' of overtime pay for all overtime hours work in willful violation of the FLSA and NYLL.

96.     Other Putative Class Members worked with Groulx and indicated they were paid in the same manner, performed similar work, and were subject to UHC's same illegal pay and timekeeping policies.

97.     Based on her experiences with UHC, Groulx is aware UHC's illegal practices were imposed on the Putative Class Members.

98.     The Putative Class Members are similarly situated in all relevant respects.

99.     Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

100.    Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

101.    Rather, the Putative Class is held together by UHC's (1) automatic meal break deduction policy, (2) automatic rounding policy, and/or (3) "on call" shift policy that systematically deprived Groulx and the Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

102.    The Putative Class Members are similarly denied overtime compensation when they work more than 40 hours in a workweek.

103.    The back wages owed to Groulx and the Putative Class Members will be calculated using the same records and using the same formula.

104.    Groulx's experiences are therefore typical of the experiences of the Putative Class Members.

105.    Groulx has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

106.    Like each Putative Class Member, Groulx has an interest in obtaining the unpaid wages owed under state and/or federal law.

107.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

108.    Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries and UHC will reap the unjust benefits of violating the FLSA and NYLL.

109.    Further, even if some of the Putative Class Members could afford individual litigation against UHC, it would be unduly burdensome to the judicial system.

110.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

111.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

112.    Among the common questions of law and fact are:

    a.    Whether UHC engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NYLL;

    b.    Whether UHC's automatic meal break deduction policy deprived Groulx and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NYLL;

    c.    Whether UHC failed to pay Groulx and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek,

including hours worked during missed and interrupted meal breaks, in violation of the FLSA and NYLL;

d.      Whether UHC knew, or had reason to know, Groulx and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA and NYLL;

e.      Whether UHC engaged in a policy and practice of requiring Groulx and the Putative Class Members to work unpaid "on call" shifts in violation of the FLSA and NYLL;

f.      Whether UHC's unpaid "on call" shift policy deprived Groulx and the Putative Class Members of pay for time worked during their unpaid "on call" shifts in violation of the FLSA and NYLL;

g.      Whether UHC's violations of the FLSA and NYLL resulted from a continuing course of conduct;

h.      Whether UHC's decision not to pay Groulx and the Putative Class Members overtime compensation for all overtime hours worked was made in good faith;

i.      Whether UHC's failure to pay Groulx and the Putative Class Members all their earned overtime wages was the result of a *bona fide* dispute; and

j.      Whether UHC's violations of the FLSA and NYLL were willful.

113.    Groulx and the Putative Class Members sustained damages arising out of UHC's illegal and uniform employment policies.

114.    Groulx knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

115.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to UHC's records, and there is no detraction from the common nucleus of liability facts.

116.    Therefore, the issue of damages does not preclude class or collective treatment.

117.    UHC is liable under the FLSA and NYLL for failing to pay Groulx and the Putative Class Members overtime compensation for all overtime hours worked when they work more than 40 hours in a workweek.

118.    Consistent with UHC's illegal automatic meal break deduction policy, Groulx and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

119.    Consistent with UHC's illegal automatic rounding policy, Groulx and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

120.    Consistent with UHC's illegal unpaid "on call" shift policy, Groulx and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

121.    As part of its regular business practices, UHC intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and NYLL with respect to Groulx and the Putative Class Members.

122.    UHC's illegal automatic meal break deduction policy deprived Groulx and the Putative Class Members of the premium overtime wages they are owed under state and federal law.

123.    UHC's illegal automatic rounding policy deprived Groulx and the Putative Class Members of the premium overtime wages they are owed under state and federal law.

124.    UHC's illegal unpaid "on call" shift policy deprived Groulx and the Putative Class Members of the premium overtime wages they are owed under state and federal law.

125.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

126.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

127.    Those similarly situated employees are known to UHC, are readily identifiable, and can be found through UHC's business and personnel records.

### COUNT I

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
(FLSA COLLECTIVE)**

128.    Groulx realleges and incorporates all other paragraphs by reference.

129.    Groulx brings her FLSA claim as a collective action on behalf of herself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

130.    UHC violated, and is violating, the FLSA by failing to pay Groulx and the FLSA Collective Members overtime wages for all hours worked in excess of 40 in a workweek, including hours worked during these employees' unpaid meal periods.

131.    Throughout the relevant period, UHC (1) automatically deducted 30 minutes/shift from Groulx's and the FLSA Collective Members' recorded hours worked for meal breaks, (2) automatically rounded these employees recorded time punches to the nearest 15-minute increment to UHC's primary benefit, and/or (3) failed to include time these employees worked during their unpaid "on call" shifts in their total hours worked in a workweek.

132.    Groulx and the FLSA Collective Members have been harmed as a direct and proximate result of UHC's unlawful conduct because they have been deprived of wages owed for work that they performed and from which UHC derived a direct and substantial benefit.

133.    UHC knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Groulx and the FLSA Collective Members overtime compensation for all overtime hours worked.

134.    UHC's failure to pay Groulx and the FLSA Collective Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

135.    Accordingly, Groulx and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS)

136.    Groulx realleges and incorporates all other paragraphs by reference.

137.    Groulx brings her NYLL claim as a class action on behalf of herself and the New York Class Members pursuant to FED. R. CIV. P 23.

138.    At all relevant times, UHC was an "employer" subject to the requirements of the NYLL and its implementing regulations.

139.    At all relevant times, UHC employed Groulx and the New York Class Members as covered "employees" within the meaning of the NYLL.

140.    Groulx and the New York Class Members are entitled to overtime pay under the NYLL.

141.    The NYLL requires employers, like UHC, to pay employees, including Groulx and the New York Class Members, overtime compensation at rates not less than 1.5 the employee's regular rate of pay for all hours worked over 40 in one workweek.

142.    UHC violated, and is violating, the FLSA by failing to pay Groulx and the New York Class Members overtime wages for all hours worked in excess of 40 in a workweek, including hours worked during these employees' unpaid meal periods. *See* NYLL Articles 6 & 9; 12 NYCRR Part 142.

143.    Throughout the relevant period, UHC (1) automatically deducted 30 minutes/shift from Groulx's and the New York Class Members' recorded hours worked for meal breaks, (2) automatically rounded these employees recorded time punches to the nearest 15-minute increment to UHC's primary benefit, and/or (3) failed to include time these employees worked during their unpaid "on call" shifts in their total hours worked in a workweek.

144.    Groulx and the New York Class Members have been harmed as a direct and proximate result of UHC's unlawful conduct because they have been deprived of wages owed for work that they performed and from which UHC derived a direct and substantial benefit.

145.    UHC knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Groulx and the New York Class Members overtime compensation for all overtime hours worked.

146.    UHC's failure to pay Groulx and the New York Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

147.    Thus, UHC's violations of the NYLL were "willful" within the meaning of NYLL § 198.

148.    Accordingly, Groulx and the New York Class Members are entitled to recover their unpaid overtime compensation, plus liquidated damages, interest, penalties, and attorney's fees and costs.

## JURY DEMAND

149.    Groulx demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Groulx, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Groulx and her counsel to represent the interests of the FLSA Collective and New York Class;

d.    An Order pursuant to Section 16(b) of the FLSA finding UHC liable for unpaid back wages due to Groulx and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid compensation;

e.    An Order pursuant to the NYLL finding UHC liable for unpaid back wages due to Groulx and the New York Class Members, plus liquidated damages in an amount equal to their unpaid compensation, and penalties;

f.      Judgment awarding Groulx and the Putative Class Members all unpaid wages, penalties, and other damages available under the FLSA and NYLL;

g.      An Order awarding attorney's fees, costs, and expenses;

h.      Pre- and post-judgment interest at the highest applicable rates; and

i.      Such other and further relief as may be necessary and appropriate.

Dated: May 8, 2023

Respectfully submitted,

**E. STEWART JONES
HACKER MURPHY, LLP**

By: _/s/ David Iversen_
David I. Iversen, Esq.
NY Bar No. 519342
28 Second Street
Troy, New York 12180
518-274-5820 – Telephone
518-274-5875 – Fax
diversen@joneshacker.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Fax
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Fax
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**